JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 23-2324 JGB (SHKx)** | Date | January 24, 2024 |
| Title | *Rebecca Arnett v. Traditions Health LLC, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. No. 11); and (2) REMANDING Case to Riverside County Superior Court; and (3) VACATING the January 29, 2024 Hearing (IN CHAMBERS)

Before the Court is a motion to remand filed by plaintiff Rebecca Arnett ("Arnett" or "Plaintiff"). ("Motion," Dkt. No. 11.) The Court finds this matter appropriate for resolution without a hearing. <u>See</u> Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The Court **VACATES** the hearing set for January 29, 2024.

## I. BACKGROUND

On October 2, 2023, Plaintiff, individually and on behalf of similarly situated individuals, filed a putative class action complaint in the Riverside County Superior Court against defendants Traditions Health LLC ("Defendant"), Mary Brackett, and Does 1 through 100. ("Complaint," Dkt. No. 1-2, Ex. A.) On November 13, 2023, Defendant removed the action pursuant to the Class Action Fairness Act of 2005, ("CAFA"). ("NOR," Dkt. No. 1.) In support of its NOR, Defendant filed the declarations of Crystal Mineo Diaz ("Diaz") ("Diaz Declaration," Dkt. No. 1-1), and the Romtin Parvaresh ("Parvaresh") ("Parvaresh Decl." Dkt. No. 1-2).

The Complaint alleges ten causes of action: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) waiting time penalties; (6) wage statement violations; (7) failure to timely pay wages; (8) failure to indemnify; (9) violations of California Labor Code section 227.3; and (10) unfair competition. (<u>See</u> Complaint.)

On December 14, 2023, Plaintiff filed this Motion. (Motion.) In support, Plaintiff filed: (1) evidentiary objections to evidence submitted in support of Defendant's NOR ("Evidentiary Objections," Dkt. No. 11-1); (2) the declaration of Brian Zaghi ("Zaghi") ("Zaghi Decl.," Dkt. No. 11-2). On January 8, 2024, Defendant opposed. ("Opposition," Dkt. No. 13.) Plaintiff replied on January 12, 2024. ("Reply," Dkt. No. 15.)

## II.   FACTS

Plaintiff is a non-exempt employee of Defendant and has worked for Defendant since approximately August 2022. (Complaint ¶ 2.) Plaintiff brings this action on behalf of herself and all other current and former non-exempt California employees employed by or formerly employed by Defendant. (Id. ¶ 1.) The proposed class is defined as follows:

> All current and former non-exempt employees of Defendants [sic] within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class.

(Id. ¶ 24.)

The Complaint alleges that Defendant has failed to pay overtime and minimum wages to Plaintiff and class members, or some of them, for all hours worked at the correct rate of pay. (Id. ¶¶ 12-13.) Defendant, allegedly, has, at times, failed to provide Plaintiff and the class members, or some of them, meal and rest periods and payment of compensation for such unprovided meal and rest periods. (Id. ¶¶ 14-15.) Plaintiff also alleges that Defendant has, at times, failed to pay Plaintiff and the class members, or some of them, the full amount of their wages owed to them upon termination and/or resignation. (Id. ¶ 16.) In addition, Plaintiff alleges that Defendant has, at times, failed to furnish Plaintiff and class members, or some of them, with itemized wage statements and the full amount of their wages for labor performed in a timely fashion. (Id. ¶¶ 17-18.) Finally, Plaintiff alleges that Defendant has, at times, failed to indemnify class members, or some of them, for the costs incurred in using cellular phones for work-related purposes necessary to perform work duties. (Id. ¶ 19.)

## III.   LEGAL STANDARD

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015). "In determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." Id. at 1197 (quotations omitted). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a

preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." Id.

Where a plaintiff makes a factual attack in the context of CAFA jurisdictional requirements, defendants are required to support their jurisdictional allegations with proof typically considered at summary judgment. A factual attack "contests the truth of the . . . allegations" themselves. Id. (citation omitted). "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." Id. (quoting Ibarra, 775 F.3d at 1197). A factual attack "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." Harris, 980 F.3d at 700 (citing Ibarra, 775 F.3 at 1199 (finding that it is sufficient to "contest[ an] assumption" without "assert[ing] an alternative [assumption] grounded in real evidence").

A defendant is required to file a notice of removal that includes only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014). However, if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. The preponderance of the evidence standard requires that "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." Sanchez v. Monumental Life. Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted). The parties "may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of the removal." Ibarra, 775 F.3d at 1197 (internal quotations and citation omitted). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Id.

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198. "As with other important areas of our law, evidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." Id. at 1199. "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." Id.

Under certain circumstances, attorneys' fees may also be included in the amount in controversy. "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." Fritsch v. Swift Transp. Co. of Ariz., 899 F.3d 785, 794 (9th Cir. 2018) (internal quotations, brackets, and citation omitted). However, "a court's calculation of future attorneys'

fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." Id. at 796.

## IV. DISCUSSION

Plaintiff moves to remand on the grounds that Defendant failed to prove by a preponderance of the evidence that the amount in controversy ("AIC") for the class exceeds the $5,000,000 CAFA jurisdictional minimum. (See Motion at 11.) In its NOR, Defendant asserts that the AIC requirement under CAFA is satisfied because Plaintiff's claims lead to an aggregate AIC of $8,584,956.89, excluding attorneys' fees. (NOR ¶ 80.) Defendant estimates that attorneys' fees may be 25% of the potential damages, or $2,146,239.22. (Id. ¶ 86.)

Here, because the Complaint does not state the amount of damages sought, Defendant must prove that the AIC exceeds $5 million. See Ibarra, 775 F.3d at 1197. "[T]he Court must decide, based upon evidence submitted, whether the amount in controversy requirement has been satisfied by a preponderance of the evidence." Torrez v. Freedom Mortg., Corp., 2017 WL 2713400, at *3 (C.D. Cal. June 22, 2017). "[A] defendant may establish the amount in controversy by relying on admissible statistical evidence taken from a representative sample and extrapolated to calculate the potential liability for the full class." Duberry v. J. Crew Grp., Inc., 2015 WL 4575018, at *2 (C.D. Cal. July 28, 2015) (citing LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1202–09 (9th Cir. 2015)). However, a defendant is "not required to comb through the records to identify and calculate the exact frequency of violations." Salcido v. Evolution Fresh, Inc., 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016). "Defendant has no obligation . . . to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." Ray v. Wells Fargo Bank, N.A., 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011). Where "a defendant must prove the amount in controversy by a preponderance of the evidence, a declaration or affidavit may satisfy the burden." Id.

In calculating the AIC, Defendant relies entirely on the Diaz Declaration. (See NOR.) Diaz declares that she has "access to" and "reviewed relevant portions of the employment and personnel records for Defendant's non-exempt employees in California and Plaintiff, which are kept in the ordinary course of business." (Diaz Declaration ¶ 2.) From this review, Diaz estimates that from October 2, 2020 through the present, Defendant has employed at least 461 non-exempt employees in California who received biweekly wage statements. (Id. ¶ 11.) Diaz declares that "these employees worked a total of approximately 34,835 workweeks during that time." (Id. ¶ 8.) Diaz further states that from October 2, 2022 through the present, Defendant has employed at least 243 non-exempt employees in California," who worked a total of approximately 4,564 pay periods during that time frame." (Id. ¶ 11.)

//
//
//
//

Defendant alleges the following amounts in controversy totaling $8,584,956.89 exclusive of attorneys' fees:

- Unpaid wages: $414,380.91
- Meal period: $1,657,523.64
- Rest period: $1,657,523.64
- Waiting time penalties: $3,017,671.20
- Wage statement penalties: $444,250.00
- Untimely wages during employment: $888,500.00
- Reimbursement: $505,107.50

(NOR ¶ 87.)

This action involves nearly identical allegations as those raised in Siaosi v. TA Operating LLC, WL 5985488 (C.D. Cal. Sept. 4, 2023), Daniels et al. v. TA Operating LLC et al., Case No. EDCV-22-cv-1634-JGB-SHK (C.D. Cal. 2023), and Peters v. TA Operating LLC, et al., 2023 WL 1070350 (C.D. Cal. Jan. 26, 2023)—all decided by this Court. In all three actions, employees filed a putative class action asserting parallel wage and hour claims in state court; Defendant removed the action pursuant to CAFA; and plaintiffs moved to remand. In Daniels, this Court granted a motion to remand, finding that defendant failed to meet its burden to demonstrate the $5,000,000 jurisdictional threshold under CAFA. See Daniels, Case No. EDCV-22-cv-1634-JGB-SHK. In Peters and Siaosi, this Court again granted motions to remand under CAFA for largely the same reasons. See Siaosi, WL 5985488, at *8; Peters, 2023 WL 1070350, at *12.

**A. Evidentiary Support**

Plaintiff objects to the Diaz Declaration regarding her estimates about the number of non-exempt employees that Defendant employed, the number of pay periods the employees worked, how many employees have separated from their employment with Defendant since October 2, 2020, and the amount of wage statements that employees received. (See Evidentiary Objections.) Plaintiff argues that Diaz's estimates are hearsay, improper legal conclusions, speculative expert testimony, fail to authenticate, and violate the best evidence rule because Defendant did not submit any records to support Diaz's declaration. (Id.) The Court disagrees. Diaz states that she is the Senior Vice President of Human Resources for Defendant, and that she has "access to census, time, and payroll records of current and former non-exempt employees of Defendant, including the records of Plaintiff . . . which are kept in the ordinary course of business, under the direction and control of Defendant's executives." (Diaz Decl. ¶ 2.) That is sufficient to establish foundation. See Torrez, 2017 WL 2713400, at *3 (finding that declaration provided an adequate foundation because the declarant specified his position in the company and stated that he has access to certain employee-related information, which he accesses through his regular course of business activities).

Plaintiff's hearsay, failure to authenticate, best evidence rule, improper legal conclusions, and speculative expert testimony objections are similarly unpersuasive. The Diaz Declaration

does not reveal any "statement, other than one made by the declarant . . ., offered in evidence to prove the truth of the matter asserted." Deleon v. Time Warner Cable LLC, 2010 WL 11515279, at *2 (C.D. Cal. Apr. 12, 2010) (internal citations omitted). The Diaz Declaration relies on Diaz's personal knowledge learned from her position and her review of payroll records. "To the extent that those [payroll] records contain hearsay statements, [Defendant] [has] established that the business records are 'records of regularly conducted activity,' which 'are not excluded by the hearsay rule.'" Id. (quoting FRE 803(6).) Furthermore, Diaz does not testify to the authenticity of an item of evidence but to her personal knowledge. As to Plaintiff's best evidence rule objection, courts have overruled such an objection because payroll contents may be proven without producing written receipts or books of account. See Thompson v. La Petite Acad., Inc., 2022 WL 5241838, at *2 (C.D. Cal. Oct. 6, 2022) (overruling best evidence rule objection because payroll contents may be proven without producing written receipts or books of account); Jones v. Tween Brands, Inc., 2014 WL 1607636, at *2 (C.D. Cal. Apr. 22, 2014) (finding that defendant was not required to provide the payroll data upon which its declarant relied upon). As to Plaintiff's improper legal conclusion, FRE 704 states "[a]n opinion is not objectionable just because it embraces an ultimate issue." FRE 704(a). "The basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact." FRE 704, Notes of Advisory Committee on Proposed Rules. The Court finds that Diaz's declaration does not contain improper legal conclusions. Plaintiff also objects to Diaz's declaration on the grounds that it constitutes speculative expert testimony. Under Rule 702, the expert "must establish the reliability of the principles and methods employed 'to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant.'" U.S. v. Hermanek, 289 F.3d 1076, 1094 (9th Cir. 2002) (explaining that the expert failed to explain in any detail the knowledge, investigatory facts and evidence he was drawing from) (citing Kumho Tire Company, LTD., et al., v. Patrick Carmichael, etc., et al., 526 U.S. 137 (1999) (italics omitted). Here, Diaz declares her role and access at the company, as well as the records which she reviewed for the purposes of the declaration. (See Diaz Decl. ¶¶ 2-4.) Accordingly, the Court may consider the Diaz Declaration. Plaintiff's evidentiary objections are **OVERRULED**.

### B. Meal and Rest Periods (Claims Three and Four)

Defendant asserts that Plaintiff's meal period and rest break violations each place $1,657,523.64 in controversy. (NOR ¶¶ 49, 52.) To reach this figure, Defendant assumes that class members missed a meal period and a rest break every single week over the course of the class period (a 20% violation rate)—this is based solely on the Diaz Declaration. (NOR ¶¶ 47-52; Motion at 13; Opposition at 12.) Plaintiff alleges that she and class members were "at times" not provided valid meal and rest periods. (Complaint ¶¶ 51, 59.) Beyond this, Plaintiff's claims are silent as to the frequency of these violations and do not allege the systematic failure that Defendant alludes to in its Opposition. (See id. ¶¶ 47-62; Opposition at 11 ("Plaintiff's Complaint alleges that Defendant systematically failed to provide meal periods and to authorize and permit rest periods.").) While Diaz provides estimates for the number of employees, workweeks and average hourly wages, she does not specify what violation rates would be appropriate according to the records she reviewed. Instead, Defendant seems to pull the assumed violation rates out of thin air—something courts have routinely rejected. See Ibarra, 775 F.3d at 1199. In Siaosi, despite declarations that included assumed violation rates, this Court

found that defendant's assumptions lacked factual support.  See Siaosi, WL 5985488, at *6; see also Salazar v. Johnson & Johnson Consumer Inc., 2018 WL 4560683, at *3 (C.D. Cal. Sept. 19, 2018).  Here, Defendant's failure to provide factual support is even more glaring.  "It would be just as consistent with the [C]omplaint to assume a frequency of . . . once-per-quarter" violation based on the Complaint's allegations of "sporadic and intermitted practices."  Duran v. Allegis Glob. Sols., Inc., 2021 WL 3281073, at *3 (N.D. Cal. Aug. 2, 2021).

Rather than attempt to distinguish the instant matter from Siaosi and other nearly identical predecessors, Defendant argues that these decisions were wrongly decided "to the extent the Court did not apply the correct standard for the amount in controversy requirement."  (Opposition at 9); see Higgins v. Am. Bottling Co., 2022 WL 13811816, at *10 (C.D. Cal. Oct. 21, 2022) (finding Defendant's assumptions unreasonable); Salazar v. Johnson & Johnson Consumer Inc., 2018 WL 4560683, at *4 (C.D. Cal. Sept. 19, 2018); Gonzalez v. H&M Hennes & Mauritz, L.P., 2022 WL 179292, at *3 (C.D. Cal. Jan. 20, 2022) ("If one is going to assume a violation rate based on nothing more than language in a complaint referencing violations 'at times,' then there is no basis for suggesting a 'violation rate of once per week as opposed to once per month, or once every few months, per class member, is reasonable.'"); Vasserman v. Henry Mayo Newhall Memorial Hospital, 65 F. Supp. 3d 932, 979 (C.D. Cal. 2014); Duran v. Allegis Global Solutions, Inc., 2021 WL 3281073, at *3 (N.D. Cal., Aug. 2, 2021).

Defendant's reliance on Arias is inapposite.  (Opposition at 9-10.)  In Arias, the Ninth Circuit vacated a lower court's sua sponte remand of a class action case, reasoning that "when a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied."  Arias v. Residence Inn by Marriott, 936 F.3d 920, 924 (9th Cir. 2019).  Here, unlike in Arias, Plaintiff contests the alleged AIC and Defendant was given an opportunity to show that the AIC is satisfied.  The Court is equally unpersuaded by Defendant's reliance on Demaria.  (Opposition at 10-12.)  In Demaria, the court found that Defendants' minimum wage and meal and rest break calculations were reasonable despite plaintiff's use of "limiting language" because the complaint alleged that the violations at issue "are due to 'policies and/or practices' on the part of [d]efendants."  Demaria v. Big Lots Stores – PNS, LLC, et al., 2023 WL 6390151 (Sept. 29, 2023).  Unlike Demaria, here Plaintiff does not allege that the meal and rest periods resulted from Defendants' policies or practices.  (See Complaint ¶¶ 47-62.)  Instead, Plaintiff alleges that these violations only occurred "at times" and to "some" class members.  (Reply at 6-7.)

The Court finds that Defendant fails to provide sufficient evidence "that would assist the Court in making a reasonable assumption as to the applicable violation rate."  Gonzalez v. H&M Hennes & Mauritz L.P., 2022 WL 179292, at *3 (C.D. Cal. Jan. 20, 2022).  Thus, Defendant does "not provide any extrinsic evidence to tip the analysis in its direction, or point to anything in the [C]omplaint that might do so."  Duran, 2021 WL 3281073, at *3.  Defendant relies on the Diaz Declaration, which the Court has deemed insufficient to meet the burden of proof, and points to other cases where courts have accepted a 20% non-compliance rate for meal and rest

periods, but it does not sufficiently explain or provide evidence of why its assumption of a 20% rate makes sense here.  (See Opposition at 11-12.)

Accordingly, because Defendant does not sufficiently "set forth any facts supporting its assumptions regarding the frequency of meal and rest period violations . . . the Court finds that [Defendant] has failed to establish by the preponderance of the evidence the amount in controversy for these claims." Salazar, 2018 WL 4560683, at *3 (finding that defendant presented no facts supporting its violation rate and thus defendant did not establish by a preponderance of the evidence the AIC for plaintiffs' meal and rest break claims); see also Garibay v. Archstone Communities LLC, 539 F. App'x 763, 764 (9th Cir. 2013) (affirming district court's decision that defendant's evidence was insufficient to support removal jurisdiction because defendant failed to provide any evidence regarding why the assumption that each employee missed two rest periods per week was more appropriate than one missed rest period per paycheck or month).

### C.  Failure to Pay Timely Final Wages (Claim Five)

In order to calculate waiting time penalties, Defendant asserts that there are at least 361 non-exempt employees in California whose employment ended and that the average rate of pay for these former employees is $34.83.  (NOR at 18; Diaz Decl. ¶ 9.)  From this, Defendant estimates that the amount in controversy as to Claim Five is $3,017,671.20.  (NOR at 18.)  Defendant again relies entirely on the Diaz Decl. for this estimation.  (Id.)  The Court finds that the Diaz Decl. is insufficient evidence—the Court is unpersuaded that Defendant has met the required evidentiary threshold to support $3,017,671.20 in controversy for Plaintiff's failure to pay timely final wages claim.

Defendant argues that its assumption are reasonable because the Complaint alleges that Defendant "employed policies and practices that resulted in, at times, not paying Plaintiff and Class Members in accordance with Labor Code section 204."  (Opposition at 21; Complaint ¶ 83.)  Defendant cites a decision by this District where the Court found that it was reasonable for the defendants to assume a 100% violation rate in estimating the waiting time penalties.  (Opposition at 21-22 (citing Ogaz v. Honeywell International, Inc., 2021 WL 2822401, at *5 (C.D. Cal. July 7, 2021).)

However, Ogaz is distinguishable.  There, the Court found that "Plaintiff alleges a pattern and practice of meal and rest break violations" and concluded that these estimates satisfied the required AIC.  Ogaz, 2021 WL 2822401, at *5.  Ogaz never considered plaintiff's other claims or attorneys' fees.  Id.  Here, the Court finds that Defendant's assumptions about Plaintiff's meal and rest break non-compliance are unreasonable.  Therefore, Defendant has not established that it is reasonable to assume that 100% of all terminated employees would have wages withheld after their employment ended.  Accordingly, without more, the Court finds that Defendant has not shown by a preponderance of the evidence that there is at least $3,017,671.20 in controversy for Plaintiff's failure to pay timely final wages claim.

**D. Remaining Claims and Attorneys' Fees**

Because Defendant's remaining AIC estimations similarly rely entirely on the Diaz Decl., the Court expects the analysis to be similar. Moreover, the Court need not decide the AIC for Plaintiff's remaining claims at issue, or the amount of attorneys' fees at stake because even if the Court found that Defendant met its burden to show by a preponderance of the evidence that its calculations for the remaining claims and attorneys' fees are reasonable, the AIC would total less than $5,000,000, which does not meet CAFA's jurisdictional threshold. As established above, Defendant's estimated meal period, rest period, and failure to provide timely final wages calculations are unreasonable. As to the remaining claims at issue, Defendant asserts that Plaintiff's claims for unpaid wages, wage statement penalties, untimely wages during employment, and reimbursement put at least $2,252,238.41 in controversy. (NOR ¶ 87.) Defendant estimates that Plaintiff will recover a 25% fee—$2,146,239.22 based on Defendant's original AIC calculations. (NOR ¶ 87.) Thus, the total estimate for the remaining claims and attorneys' fees is $4,398,477.63 which falls below the jurisdictional threshold. Furthermore, the attorneys' fees estimate would likely be lower since Defendant calculated the fees by considering its estimates for Plaintiff's meal and rest period claims, which the Court found to be based on unreasonable assumptions. Accordingly, the Court finds the AIC for Plaintiff's claims is below the threshold amount necessary for federal diversity jurisdiction.

## V.   CONCLUSION

!

For the reasons above, the Court **GRANTS** the Motion. The January 29, 2024 hearing is **VACATED**. The case is **REMANDED** to the Superior Court of California for the County of Riverside. The Clerk is directed to close the case.

**IT IS SO ORDERED.**